UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------X

SABRINA TONER,

Plaintiff, 22 Civ. 1354 (JMF)

-v-

CITY OF NEW YORK, et al.,

Defendants.

--------------------------------------------------------------------------------X

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE***

**BRETT H. KLEIN, ESQ., PLLC**
*Attorneys for Plaintiff*
233 Broadway, Suite 1720
New York, New York 10279
(212) 335-0132

# TABLE OF CONTENTS

**I. PRELIMINARY STATEMENT** .......... **4**

**II. ARGUMENTS IN OPPOSITION** .......... **5**

**A. The jury should not be instructed that the Plaintiff's arrest was lawful.** .......... **5**

**B. Exhibits related to Plaintiff's arrest and dismissed claims should not be excluded.** .......... **6**

1. Plaintiff's Certificates of Disposition should not be excluded. .......... 6
2. Plaintiff's Summonses should not be excluded. .......... 7
3. Miscellaneous Parks Enforcement Patrol paperwork should not be excluded. .......... 8
4. A photograph of Plaintiff's dog should not be excluded. .......... 8

**C. New York Presbyterian Hospital radiology documents were not disclosed late and should not be excluded.** .......... **9**

**D. The jury must be instructed on the elements of assault and battery.** .......... **10**

**E. Testimony and evidence regarding medical diagnosis should not be excluded.** .......... **11**

**F. Only damages for garden variety emotional injuries will be requested.** .......... **12**

**G. Economic damages will not be argued.** .......... **12**

**H. The City of New York is a party in this case and that fact cannot be hidden from the jury.** .......... **12**

**I. Plaintiff will not refer to defense counsel as "City Attorneys."** .......... **13**

**J. Suggestions of a specific dollar amount should not be excluded.** .......... **14**

**K. Evidence of individual Defendants' disciplinary histories is purely hypothetical.** .......... **14**

**L. Concerns about allegations against other law enforcement officials, events in the news, or inflammatory terms to describe police activities should be addressed at trial.** .......... **15**

**M. The City's polices and directives should not be excluded.** .......... **15**

**N. Punitive damages are available in this case.** .......... **16**

**III. CONCLUSION** .......... **17**

# TABLE OF AUTHORITIES

*Adams v. City of New York*, 993 F. Supp. 2d 306 (E.D.N.Y. 2014) .......... 13
*Davis v. Scherer*, 468 U.S. 183 (1984) .......... 15
*DiSorbo v. Hoy*, 343 F.3d 172 (2d Cir. 2003).......... 16
*Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306 (S.D.N.Y. 2018) .......... 12
*Ebewo v. Martinez*, 309 F. Supp. 2d 600 (S.D.N.Y. 2004) .......... 9
*Edwards v. Schoenig*, No. 05-CV-5427 JS GRB, 2014 WL 4638935 (E.D.N.Y. Sept. 16, 2014)11
*Estate of Jaquez v. Flores*, 2016 U.S. Dist. LEXIS 42579 .......... 11
*Flaks v. Koegal*, 504 F.2d 702 (2d. Cir. 1974) .......... 16
*Gogol v. City of New York*, No. 15- cv-05703, 2018 WL 4616047 (S.D.N.Y. Sept. 26, 2018) ... 15
*Hurt v. City of New York*, No. 15-CV-7612 (PKC), 2019 WL 5781990 (S.D.N.Y. Nov. 6, 2019) .......... 10
*Jean-Laurent v. Hennesy*, 840 F. Supp. 2d 529 (E.D.N.Y. 2011) .......... 7
*Lemus v. Pezzementi*, No. 15 Civ. 5592 (NSR)(AEK), 2023 WL 6519723 (S.D.N.Y. June 16, 2023) .......... 11
*Martinez v. City of New York*, No. 16 Civ. 79, 2022 WL 17090267 (E.D.N.Y. Nov. 18, 2022) . 13
*McLeod v. Llano*, No. 17-cv-06062, 2021 WL 1669732 (E.D.N.Y. Apr. 28, 2021).......... 15
*Mileski v. Long Island R. Co.*, 499 F.2d 1169 (2d Cir. 1974).......... 14
*Ojeda v. Metro. Transp. Auth.*, 477 F.Supp.3d 65 (S.D.N.Y. 2020) .......... 14
*Smith v. Wade*, 461 U.S. 30 (1983).......... 16
*Tardif v. City of New York*, 344 F. Supp. 3d 579 (S.D.N.Y. 2018) .......... 13
*United States v. Ozsusamlar*, 428 F. Supp. 2d 161 (S.D.N.Y. 2006) .......... 6, 7

## I. PRELIMINARY STATEMENT

Plaintiff Sabrina Toner respectfully submits this Memorandum of Law in opposition to Defendants' motions *in limine*, Dkt. 71-72.

As courts in this Circuit have repeatedly emphasized, motions *in limine* are disfavored vehicles for broad evidentiary exclusions and should be granted only where the challenged evidence is clearly inadmissible on all possible grounds. Defendants do not meet that standard here. Instead, they ask the Court to resolve evidentiary questions in a factual vacuum, to exclude materials that are plainly relevant to context, credibility, and damages, and to impose legal framing that risks misleading rather than assisting the jury.

This case arises from a discrete encounter between Plaintiff and Parks Enforcement Patrol Officers that escalated into the use of force. The central questions for the jury will be what occurred during that encounter and whether the force used was lawful. Plaintiff does not intend to expand the case beyond those issues. But neither should Defendants be permitted to artificially constrict the evidentiary record or to shield the jury from facts necessary to understand the circumstances of the arrest, the nature of Plaintiff's injuries, and the basis for her claims.

Where appropriate, Plaintiff has narrowed her positions—for example, by confirming that she does not seek economic damages or emotional distress damages beyond the garden variety. But Defendants' motions go far beyond reasonable narrowing. They seek categorical exclusions, advisory rulings on hypothetical evidence, and jury instructions that would introduce confusion into straightforward issues.

At bottom, Defendants' motions attempt to resolve contested factual issues and shape the narrative of the case before trial begins. That is not the function of a motion *in limine*. The Court should instead permit the parties to present their evidence in context and address specific objections as they arise at trial.

For these reasons, and as set forth below, Defendants' motions should be denied.

## II. ARGUMENTS IN OPPOSITION

### A. The jury should not be instructed that the Plaintiff's arrest was lawful.

Defendants request that the jury be instructed that the arrest of Ms. Toner was "lawful" and that the arrest itself "cannot be the basis for a finding of liability or an award of damages." Dkt. 72 at 3. Neither of these instructions should be offered because they are more likely to confuse than assist the jury.

The parties agree that the arrest was lawful. Indeed, Ms. Toner paid a fine after pleading guilty to failing to walk her dog on a leash. *See* Ex. 7 (Certificate of Disposition). She has neither alleged false arrest in this litigation nor has she argued that the police did not have the authority to arrest her, and at no point in the trial would counsel make or gesture to such an obviously irrelevant argument. Accordingly, raising the issue in jury instructions is likely to do more to confuse than clarify.

Should the Court conclude to the contrary that such an instruction is necessary, at the very least it should be tailored to the particular facts of this case. Though Ms. Toner pled guilty to allowing her dog off leash, she did *not* plead guilty to any other charges, to wit: Disorderly Conduct and Failure to Comply. *Id*. Those charges were rightly dismissed. *See* Exhibits 8 & 9 (Certificates of Disposition for Disorderly Conduct and Failure to Comply). Should the Court determine that the jury must be instructed that her arrest was lawful, the jury should *not* be informed that Ms. Toner was justifiably arrested for disorderly conduct and failure to comply. And in the unlikely event that the Court disagrees with that, then at the very least the jury should be told that the disorderly conduct and failure to comply charges were dismissed, sealed, and otherwise deemed legal nullities per the New York Criminal Procedure Law.

**B. Exhibits related to Plaintiff's arrest and dismissed claims should not be excluded.**

Defendants argue that a "majority of plaintiff's exhibits should be precluded as they are irrelevant to the claims and damages at issue." Dkt. 72 at 13. Defendants concede, at least, that the exhibits are certainly potential impeachment materials. *Id*. at 13-14. A review of Defendants' more detailed listing of their requests, however, reveals the incorrectness of their relevance argument.

A district court should exclude evidence on a motion in limine "only when the evidence is clearly inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006). Courts considering a motion in limine "may reserve judgment until trial so that the motion is placed in the appropriate factual context." *Id*. In none of the instances below have Defendants shown that the evidence is "clearly inadmissible on all potential grounds." Accordingly, each of these motions should be denied at this time.

**1. Plaintiff's Certificates of Disposition should not be excluded.**

Defendants argue that three certificates of disposition related to summonses Ms. Toner received on November 19, 2020, should be excluded. Dkt. 72 at 5. They argue that because the arrest is not at issue, the certificates of disposition would unduly "focus the jury on the legality of the plaintiff's arrest." *Id*.

The Court's ruling on this motion will necessarily depend in part on how it rules on whether the jury should be instructed that the arrest was "lawful." Assuming the Court agrees with Plaintiff that no instruction should be offered indicating that the arrest was lawful, Plaintiff agrees that the Certificates of Disposition (and the summonses, discussed *infra* at II.B) would be irrelevant and therefore inadmissible except for impeachment purposes. *See* FRE 402. However, if the jury is instructed either that the arrest was lawful, or if the jury is informed of the two

dropped charges, the Certificates of Disposition would be critical information for the jury to understand the context of those facts. *Id.*

Defendants further argue that "for clarity, and to avoid juror confusion and unfair prejudice to the defendants, the jury should be advised that the arrest was lawful and cannot be the basis for a finding of liability or an award of damages" because "[a]bsent such an instruction, the jury may naturally be led to believe that because they are assessing the circumstances surrounding plaintiff's arrest, they should also be assessing the constitutionality of plaintiff's arrest." Dkt. 72 at 12.

Neither common sense nor the authority cited by Defendants support such an instruction. *See, e.g.*, *id*. (citing *Jean-Laurent v. Hennesy*, 840 F. Supp. 2d 529, 549 (E.D.N.Y. 2011) (precluding plaintiff merely from referring to his arrest and subsequent prosecution as "unlawful"—which, of course, is *not* the same as instructing the jury that it was lawful). Plaintiff in this case has no intention of referring to her arrest as unlawful. Accordingly, there is no risk that the jury will misunderstand the basis of relief Plaintiff seeks. On the other hand, an instruction that liability and damages in this case arise from the circumstances of an arrest but not the arrest itself introduces a level of legal nuance that will raise more questions than answers. The requested instruction should therefore be rejected.

**2. Plaintiff's Summonses should not be excluded.**

Defendants make the same relevance argument regarding the summonses Ms. Toner received on November 19, 2022, as they did regarding the certificates of disposition. And for the same reasons argued above, *supra* at II.A, the Court should deny the request to preclude these exhibits at this time.

**3. Miscellaneous Parks Enforcement Patrol paperwork should not be excluded.**

Defendants seek to exclude two documents produced by law enforcement: Exhibit 1, a Parks Enforcement Patrol Arrest Screen, and Exhibit 5, Ms. Toner's New York City Police Department ("NYPD") summary report. *See* Dkt. 72 at 14-15.

With regard to the first, Defendants argue that *their own records of the arrest* are irrelevant because they were created after the arrest took place. This argument goes to weight, not admissibility. Defendants' own records of the arrest are probative both of the circumstances of the arrest and, if used for impeachment purposes, of the credibility of Defendants and their witnesses. *See* FRE 402.

Exhibit 5 is the report created by the NYPD when Ms. Toner was arrested and includes, *inter alia,* her mugshot photo. The picture is probative of Ms. Toner's condition after the arrest, which the jury will use both to consider the likelihood that excessive force was used based on Ms. Toner's physical appearance on the day of the arrest, and to consider damages in light of her visibly shaken and injured appearance. *See* FRE 402.

**4. A photograph of Plaintiff's dog should not be excluded.**

Defendants seek to preclude a photograph of Parks Enforcement Patrol Officers bringing Ms. Toner's dog back to her apartment after she was handcuffed and arrested. Dkt. 72 at 16. Defendants argue that the photograph would "confuse the issues, mislead the jury, and waste time." *Id*. Each of these arguments is incorrect because Defendants misapprehend the purpose for which the photograph would be admitted. As Defendants themselves will no doubt seek to do, the Plaintiff will seek to provide context for the arrest. An important part of that context involves the fact that the unleashed dog in this case is extremely small and obviously posed no threat to either the Defendant Officers or to the public. Further, the dog's size and stature otherwise

provides context for Ms. Toner's state of panic during her interaction with the Defendants. Accordingly, the photograph of the dog is relevant and presents no risk of unfair prejudice to Defendants. *See* FRE 402, 403.

**C. New York Presbyterian Hospital radiology documents were not disclosed late and should not be excluded.**

Defendants seek to preclude radiology films that show Plaintiff's injuries in this case on the basis that the document was only produced to them on April 17, 2026. Dkt. 72 at 16. This motion misses the mark in two critical ways.

First, Defendants *always* had access to this information. A medical records release was provided to Defendants at the very beginning of this litigation per Local Rule 83.10 and *both parties* produced the relevant paper radiology records, which included the radiology reports, in their initial disclosures. *See* Plaintiff's Exhibit PX-11 (certified copy of New York-Presbyterian records produced by defendants as part of their initial disclosures that include radiology findings at DEF0208-DEF0211); *cf.* PX-12 at 1-4. Though the actual films were not initially provided to the Defendants by Plaintiff because they were not obtained by Plaintiff until later in the litigation, Defendants *always* had the ability to request and review the underlying films through the medical records release.

Second, even assuming *arguendo* that Defendants did not have a release and the relevant underlying radiology reports and findings since the outset of discovery, disclosure of the films in April did not result in any prejudice. As they themselves argue, the purpose of disclosure deadlines is "to prevent the practice of 'sandbagging' an opposing party with new evidence." Dkt. 72 at 16 (citing *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004)). The medical reports, which include the radiology results, with which these additional documents are consistent, were provided to Defendants long ago. Trial is scheduled for September 28. Even if

disclosure were late in this instance—and it is not—Defendants are in no way prejudiced by receiving these records a full four months before trial begins.

**D. <u>The jury must be instructed on the elements of assault and battery.</u>**

Defendants argue that the jury should not be instructed on the elements of a state law claim of assault and battery because when a jury finds that a particular officer used excessive force in violation of the Fourth Amendment, that finding necessarily establishes the elements of a state-law assault and battery claim based on the same conduct. *See* Dkt. 72 at 8-9.

Defendants' premises are correct, but the conclusion does not follow. Here, if the jury were to conclude that (1) the plaintiff was subjected to unlawfully excessive force by one or more officers, but (2) the evidence does not permit it to determine which specific officer committed the constitutional violation, the jury could decline to impose individual liability under § 1983 (because personal participation is required for a federal excessive force claim) but nonetheless find that the City is liable. *See, e.g.*, *Hurt v. City of New York*, No. 15-CV-7612 (PKC), 2019 WL 5781990, at *1 (S.D.N.Y. Nov. 6, 2019) (describing jury verdict where "no liability was found on the section 1983 claim against the only identified officer alleged to have personally participated in the actions directed to [plaintiff]" but nonetheless found that "state-law claims were proven against an unidentified officer of NYPD for whom the City was vicariously liable under the doctrine of *respondeat superior*.").

Failing to instruct the jury on assault and battery would therefore create a risk of a false negative: the jury could find that the plaintiff was subjected to unlawful force but return a defense verdict simply because it cannot attribute the conduct to a specific officer for purposes of § 1983. Providing both instructions ensures that the jury is equipped to render a legally accurate verdict that reflects its factual findings. Accordingly, the Court should instruct the jury on both excessive use of force and assault and battery.

**E. Testimony and evidence regarding medical diagnosis should not be excluded.**

Defendants argue that "plaintiff should be precluded from introducing evidence or testimony that defendants'' actions caused her to suffer a rib fracture because she is not qualified to offer such an opinion." Dkt. 72 at 19. Defendants' motion overstates the law and seeks to exclude plainly admissible evidence. The governing rule in the Second Circuit is not that expert testimony is always required to establish injury or causation, but that it is required only where the causal connection is beyond the ken of a lay juror. This case does not fall into that category, As Defendants themselves explain, "[f]or simple and familiar injuries, expert opinion is not necessarily required. *Id*. at 20 (citing *Estate of Jaquez v. Flores*, 2016 U.S. Dist. LEXIS 42579, at *8). A rib fracture resulting from a discrete physical encounter—such as being struck, tackled, or compressed by officers—is paradigmatically the kind of injury that jurors can understand without expert assistance. *See, e.g.*, *Lemus v. Pezzementi*, No. 15 Civ. 5592 (NSR)(AEK), 2023 WL 6519723, at *10 (S.D.N.Y. June 16, 2023), *report and recommendation adopted*, 2023 WL 6390170 (S.D.N.Y. Sept. 29, 2023) ("The Court also reviewed Defendants' post-hearing submission regarding the purported need for expert testimony to establish that Lemus suffered injuries resulting from the assault. As Defendants acknowledge, expert testimony is unnecessary where a finder of fact is as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training. . . . The Court does not need testimony from an expert witness in order to conclude that there was a causal link between the assault and Lemus's resulting injuries. (cleaned up)); *Edwards v. Schoenig*, No. 05-CV-5427 JS GRB, 2014 WL 4638935, at *3 (E.D.N.Y. Sept. 16, 2014) ("if, as Plaintiff claims, he was forcefully beaten and sustained serious injuries including a fractured jaw and broken

bones, such injuries can be demonstrated through documentary evidence and a jury does not need a doctor to orally testify to such matters.").

Jurors do not require medical training to understand that force applied to the torso can break a rib. This is not a case involving complex medical etiology, delayed onset conditions, or competing physiological mechanisms. It is a straightforward temporal sequence: defendants used force; plaintiff immediately experienced acute chest pain; medical evaluation shortly thereafter revealed a rib fracture. That is sufficient for a jury to infer causation.

**F. <u>Only damages for garden variety emotional injuries will be requested.</u>**

Plaintiff does not intend to seek damages for emotional injuries beyond the garden variety. To be clear, the emotional injuries Ms. Toner has suffered were severe, and comparable to other cases in this district that have resulted in awards in the range of $125,000 based on the subjective testimony of the plaintiff. *See, e.g.*, *Duarte v. St. Barnabas Hosp.*, 341 F. Supp. 3d 306, 324 (S.D.N.Y. 2018) ("The Second Circuit has affirmed awards of $125,000 [ ] to plaintiffs for [garden variety] emotional distress . . . where the evidence of emotional distress consisted only of testimony establishing shock, nightmares, sleeplessness, humiliation, and other subjective distress without evidence of secondary physical results or consequences . . . " (cleaned up)).

**G. <u>Economic damages will not be argued.</u>**

Plaintiff does not intend to seek economic damages and therefore offers no position on Defendants' motion *in limine* to exclude argument concerning them.

**H. <u>The City of New York is a party in this case and that fact cannot be hidden from the jury.</u>**

The City, though it is a party in this case, seeks to keep its identity hidden from the jury. This Court should reject that request, as others have. Unlike some cases cited by Defendants, the

City remains a party in this case. *See, e.g.*, *Tardif v. City of New York*, 344 F. Supp. 3d 579, 608 (S.D.N.Y. 2018) ("Defendants move to preclude Tardif from referring to defense counsel as City attorneys, from including the City of New York in the caption to this action on the verdict sheet, and from referring to any alleged New York City Police Department policy or practice, arguing that there is no claim for municipal liability in this action. Because the City is a defendant in this action, this motion is DENIED."); *Adams v. City of New York*, 993 F. Supp. 2d 306, 329 (E.D.N.Y. 2014) ("Defendants' argument is flatly rejected. Where, as here, the City of New York is a Defendant in the case, the City of New York will be listed on all documents and will be identified to the jury. The Court also rejects Defendants' request that the Court not refer to the City attorneys as City attorneys."); *Martinez v. City of New York*, No. 16 Civ. 79, 2022 WL 17090267, at *8 (E.D.N.Y. Nov. 18, 2022) ("[T]he City remains a party to this action under the doctrine of respondeat superior for Ms. Martinez's state law claims of assault and battery. As such, the Court will not change the caption of this case or otherwise structure the trial to prevent the jury from learning this fact."). Indeed, keeping that information from the jury is likely to create confusion because it would suggest that there would be no party responsible for damages in the event that they find in favor of Ms. Toner on the assault and battery state-law claim but against her on the excessive force claim. The motion should therefore be denied.

**I. <u>Plaintiff will not refer to defense counsel as "City Attorneys."</u>**

Consistent with precedent, Plaintiff intends to refer to opposing counsel as "defense counsel," "Assistant Corporation Counsel," or "attorneys from the Office of the Corporation Counsel."

**J. Suggestions of a specific dollar amount should not be excluded.**

Defendants argue that Plaintiff should be precluded from requesting a specific dollar amount from the jury. They argue that providing the jury with a suggestion as to an award "unlawfully anchors the jurors' expectations of a fair award at a place set by counsel, rather than by the evidence." Dkt. 72 at 27. That argument overstates Second Circuit precedent and ignores the Court's ability to guide the jury to making a sensible determination as to damages.

The Second Circuit has made clear that a "flat prohibition" on the suggestion of a dollar amount would be a "drastic measure" at odds with the "flexible approach" it prefers. *See Mileski v. Long Island R. Co.*, 499 F.2d 1169, 1174 (2d Cir. 1974). Rather than a flat prohibition, it is clear that whether a specific dollar amount may be offered is left "largely to the trial judge's discretion." *Id*. District courts in this Circuit thus routinely permit counsel to suggest damages figures in summation, subject to appropriate limiting instructions that the jury is not bound by counsel's suggestions and must rely on the evidence. *See, e.g.*, *Ojeda v. Metro. Transp. Auth.*, 477 F.Supp.3d 65, 80-81 (S.D.N.Y. 2020) (finding no error when a plaintiff's counsel suggested a dollar amount for the damages because the court provided "thorough instructions to the jury" on this issue). These common and common-sensical safeguards fully address Defendants' concerns without resorting to the "drastic measure" of prohibiting counsel from suggesting a number that may allow the jury a sensible framework for considering damages.

**K. Evidence of individual Defendants' disciplinary histories is purely hypothetical.**

Plaintiff is not at present aware of any relevant evidence of individual defendants' disciplinary histories and therefore does not intend to introduce any such evidence. However, the Court should decline to rule on this purely hypothetical objection and invite Defendants to object at trial so that the Court can evaluate the evidence in context.

**L. <u>Concerns about allegations against other law enforcement officials, events in the news, or inflammatory terms to describe police activities should be addressed at trial.</u>**

Plaintiff does not seek to introduce testimony or evidence about officer misconduct other than misconduct attributable to the Defendant Officers in this case. Defendants further move to preclude use of the terms "testilying" and "blue wall of silence." Dkt. 72 at 30. Plaintiff does not intend to use either of these terms at trial. However, the Court should decline to rule on this purely hypothetical objection and invite Defendants to object at trial so that the Court can evaluate the evidence in context.

**M. <u>The City's polices and directives should not be excluded.</u>**

Defendants argue that "Plaintiff should be precluded from referring to and offering any evidence regarding Parks Enforcement Patrol or Parks Department policies or directives." Dkt. 72 at 31. Defendants' blanket argument that the City's policies and procedures are irrelevant is incorrect as a matter of law. Though the City is correct in arguing that violation of a procedure is not dispositive of a constitutional violation, that does *not* mean that procedural violations are not relevant. A "violation [of government procedure] is a circumstance relevant to [an] official's claim of qualified immunity." *Davis v. Scherer*, 468 U.S. 183, 194-95 (1984); *accord Brown v. City of New York*, 798 F.3d 94, 101 n.11 (2d Cir. 2015) (holding that regulations of a single department are considered relevant to constitutional rulings on excessive force); *Gogol v. City of New York*, No. 15- cv-05703, 2018 WL 4616047, at *5 (S.D.N.Y. Sept. 26, 2018) (collecting cases); *McLeod v. Llano*, No. 17-cv-06062, 2021 WL 1669732, at *5 (E.D.N.Y. Apr. 28, 2021) (holding that the NYPD Patrol Guide was generally relevant "in determining how a reasonable NYPD officer would conduct himself under a given set of circumstances"). Thus, though Plaintiff does not intend to offer any such evidence as a documentary case in chief exhibit, it should be permitted under appropriate circumstances as fair cross examination subject matter.

**N. <u>Punitive damages are available in this case.</u>**

The City summarily argues that Plaintiff should be precluded from seeking punitive damages because it "is not a matter of right" and "the evidence at trial is unlikely to support a factual finding that the defendants acted with the requisite state of mind necessary to justify an award of punitive damages." Dkt. 72 at 23. This is wrong both factually and legally.

The Second Circuit has indicated that precluding a Plaintiff from seeking punitive damages before trial may be reversible error because "there has been no trial of the facts and therefore no basis for determining how egregious or opprobrious the conduct has been." *Flaks v. Koegal*, 504 F.2d 702, 707 (2d. Cir. 1974). Defendants have not established that plaintiff cannot meet the standard for punitive damages. *See DiSorbo v. Hoy*, 343 F.3d 172, 186 (2d Cir. 2003) ("A jury may 'assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). The evidence at trial will show that law enforcement officers bloodied the face and broke the rib of a woman who merely walked her dog off leash and exercised her First Amendment rights—certainly, the sort of circumstances that could result in a jury finding that punitive damages are appropriate. The motion should therefore be denied.

## III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant relief as stated above and such other relief to Plaintiff that the Court deems just and proper.

Dated: New York, New York
May 8, 2026

BRETT H. KLEIN, ESQ. PLLC
*Attorneys for the Plaintiff*
233 Broadway, Suite 1720
New York, New York 10279
(212) 335-0132

By: Brett Klein
BRETT H. KLEIN